SO ORDERED.

SIGNED this 12th day of January, 2012.



Dale L. Somers
United States Bankruptcy Judge

___

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

PATRICK E. TOWNSEND,　　　　　　　　　CASE NO. 10-14167
EMILY S. TOWNSEND,　　　　　　　　　　CHAPTER 7

　　　　　　　　　　DEBTORS.

OPINION DENYING THE TRUSTEE'S OBJECTION TO THE

DEBTORS' CLAIM OF EXEMPTIONS UNDER 11 U.S.C.A. § 522(d)

This matter is before the Court on the Chapter 7 Trustee's objection to the

Debtors' assertion they are eligible to claim the federal exemptions provided by 11

U.S.C.A. § 522(d). Trustee J. Michael Morris appears as his own attorney. The Debtors

appear by counsel Dana Manweiler Milby. The Court has reviewed the relevant materials

and is now ready to rule.

**Facts**

**1. Stipulated facts.**

The parties stipulated to the following facts. When the Debtors filed for bankruptcy on December 14, 2010, they "resided" in Bel Aire, Kansas, and had done so since March 2010. They had a prior "residence" in Arkansas City, Kansas, from October 2009 to March 2010. Before that, they had a "residence" in Newkirk, Oklahoma, from March 2008 to October 2009. Before that, they had another "residence" in Arkansas City, Kansas, from October 2007 to March 2008. The parties did not specify what they meant by either "resided" or "residence."

**2. Interpretation of stipulated facts.**

When the Debtors filed for bankruptcy, they had been "residents" of Kansas for approximately 15 months, and had been "residents" of Oklahoma for approximately 19 to 20 months before that. December 14, 2008, was approximately 730 days before the Debtors filed their bankruptcy petition. June 17, 2008, was approximately 180 days prior to December 14, 2008. There is no dispute that the Debtors lived in both Kansas and Oklahoma during the 730 days before they filed their bankruptcy petition, and lived in Oklahoma for all of the 180 days before that 730-day period.

**3. Facts drawn from the Court file for this case.**

In their original bankruptcy schedules, on Schedule C — Property Claimed as Exempt, the Debtors did not claim exemptions under either Kansas or Oklahoma law, but instead claimed those provided by § 522(d) of the Bankruptcy Code. Although the Debtors gave a Kansas address as their residence on their bankruptcy petition, they

2

claimed as exempt real property located in El Reno, Oklahoma, under § 522(d)(1), which authorizes the exemption, up to a specified dollar value, of real or personal property used as a residence. The Debtors gave the value of that exemption as $12,000. The El Reno property has not been included as one of the "residences" listed in the parties' stipulation. The Debtors also claimed various items of personal property as exempt under other portions of § 522(d).

The Trustee objected, asserting that the Debtors were only entitled to exemptions provided by Oklahoma law, so none of their claimed exemptions should be allowed. He went on to make an alternative argument, conceding it was possible the Debtors might not be entitled to claim Oklahoma exemptions — either because they were not residents of that state or because their property was not located there — and therefore might be entitled to claim exemptions under § 522(d). But even if that were true, the Trustee argued, the Debtors could not claim the El Reno property as exempt because they were not using it as a residence when they filed their bankruptcy case.

The Debtors responded that they did not qualify for Kansas exemptions because they did not reside in Kansas for the full two-year period before they filed for bankruptcy, and that although they resided in Oklahoma during the six-month period before that two-year period, they could not claim Oklahoma exemptions because that state limits its exemptions to residents of the state. They added, however, that Oklahoma has opted out of the § 522(d) exemptions only for its residents. Consequently, they argued, they were eligible to claim the § 522(d) exemptions.

3

On February 14, 2011, the Debtors filed an amended Schedule C, changing the basis for their exemption of the El Reno property to § 522(d)(5), which authorizes the exemption of any property up to a value of $1,150, plus, to the extent the residence exemption under § 522(d)(1) is not used, value of up to $10,825[1] more. Relying on § 522(d)(5), the Debtors claimed exemptions for which they gave these values: (1) $2,210 and $17,250 for the El Reno property, (2) $90 for a deposit account, and (3) $4,400 for a 2010 tax refund. They showed the total value of the El Reno property to be equal to the sum of the two values they gave as the value of their exemption claim in the property. The Trustee objected, incorporating his prior objection, and adding that he "further objects pending determination of the relative values of the claims of exemption and the property in which the claim is made."[2] The Debtors filed a response incorporating their response to the Trustee's original objection.

On June 21, 2011, the exemption dispute came on for hearing, and the parties advised the Court there was a question whether federal or Oklahoma exemptions applied. The Court set a discovery deadline and continued the matter for a September status conference.

On June 28, 2011, the Debtors filed another amended Schedule C. This time, they

---

[1] *See* Judicial Conference of the United States, Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(A) of the Code, 75 Fed. Reg. 8747, 8748 (Feb. 24, 2010) (specifying new dollar amounts for various Bankruptcy Code provisions, including § 522(d)(5), to take effect Apr. 1, 2010), *available at* 2010 WL 637457.

[2] Docket No. 25.

4

reduced the value of their claimed exemption in the El Reno property to $3,165, and showed the current value of the property to be $7,000. Otherwise, the second amended Schedule C was identical to the first amended one. The Trustee did not file a new objection to this amendment.

**Discussion**

    **1. Burden of proof.**

Federal Rule of Bankruptcy Procedure 4003 governs claiming and objecting to exemptions, and subsection (d) provides that in any hearing under the rule, "the objecting party has the burden of proving that the exemptions are not properly claimed." Consequently, it was up to the Trustee to show the Debtors are not entitled to claim exemptions under § 522(d) of the Bankruptcy Code. Although there are other provisions of federal law that provide exemptions, the exemptions established by § 522(d) are commonly referred to as the "federal exemptions."[3]

    **2. The Trustee's failure to object to the Debtors' second amended Schedule C does not bar determining their right to claim the federal exemptions.**

As a preliminary matter, the Debtors argue the Trustee's objection to their exemptions should be overruled because he did not file a new objection when they filed their second amended Schedule C. The Trustee points out that the second amendment

---

[3]*See* 4 *Collier on Bankruptcy*, ¶ 522.02[3] (Alan N. Resnick & Henry J. Sommer, 16th ed. 2011) (listing a number of federal statutes outside the Bankruptcy Code that establish exemptions); *see also, e.g.*, *In re Stephens*, 402 B.R. 1, 3 (10th Cir. BAP 2009) (referring to § 522(d) exemptions as the "federal exemptions").

5

reduced the value of the Debtors' claimed exemption in the El Reno property to $3,165 and their estimate of the total value of that property to $7,000, but did not otherwise change their exemption claims. The Court agrees with the Trustee that these valuation changes had no effect on his ability to contest the Debtors' eligibility to claim the federal exemptions. At most, the Trustee might have waived his effort to reserve the right to object to the values they gave for the El Reno property by not filing a new objection. The Court rejects the Debtors' suggestion the Trustee's failure to file a new objection when they filed their second amended Schedule C somehow defeated his objection to their effort to claim the § 522(d) exemptions, and will not overrule the objection for this alleged procedural default.

### 3. The Debtors are entitled to claim the federal exemptions because Oklahoma law does not specifically preclude them from doing so.

The parties' dispute requires the Court to determine the meaning of § 522(b) as applied to the Debtors' situation. Before 2005, § 522(b) generally authorized debtors to claim exemptions under the law of the state in which their domicile had been located for more of the 180 days before they filed for bankruptcy than it had been located in any other state.[4] In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act amended the domicile requirement for claiming a state's exemptions to require a debtor to have been domiciled in a state for 730 days before filing a bankruptcy petition in order to

---

[4] *See* 11 U.S.C.A. § 522(b)(2)(A) (West 2004).

6

qualify to claim that state's exemptions.[5] If the debtor has not lived in a single state for that 730-day period, then the debtor may only claim exemptions under the law of the state where the debtor's domicile was located for the greater part of the 180-day period immediately before the 730-day period. BAPCPA also added a saving clause at the end of § 522(b)(3) to cover any situation where this domicile requirement would make the debtor ineligible to claim exemptions under the law of any state.

As relevant here, the 2005 version of § 522(b) provides:

> (b)(1) . . . [A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is —
>
>> (A) . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.
>> . . . .
>
> If the effect of the domiciliary requirement under subparagraph (A)

---

[5]Pub. L. No. 109-8, § 307 (2005), 119 Stat. 23. Section 224 of BAPCPA redesignated § 522(b)(2)(A) as § 522(b)(3)(A).

7

is to render the debtor ineligible for any exemption, the debtor may
elect to exempt property that is specified under subsection (d).

Paragraph (2) would allow the Debtors to claim the § 522(d) exemptions unless "the State law that is applicable to [them] specifically does not so authorize." This portion of the statute is generally said to authorize the states to opt out of the exemptions provided by subsection (d).[6] Paragraph 3(A) provides that the state law "applicable" in the Debtors' "domicile" provides exemptions the Debtors can claim so long as their "domicile" was located in that state for two full years ("730 days") before they filed their bankruptcy petition.

### a. The Trustee's objection could be overruled because he failed to prove the Debtors' "domicile" was ever located in a state that barred them from claiming the federal exemptions.

The Court notes the parties' stipulation specifies where the Debtors' "resided" when they filed their bankruptcy case, and then lists several "prior residences" for them. As shown by the quote above, § 522(b)(3)(A) uses the word "domicile," not "reside" or "residence." For "residence," Black's Law Dictionary provides this definition and explanation:

> **residence.** . . . 2. The place where one actually lives, as distinguished from a domicile. . . . Residence usually just means bodily presence as an inhabitant in a given place; domicile usually requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes though, the two terms are used

---

[6] 4 *Collier on Bankruptcy*, ¶ 522.02[1] & [2].

8

synonymously.[7]

A leading bankruptcy treatise similarly contends "domicile" in § 522 means more than just residence, requiring in addition an intention to remain where the residence is located.[8] The Trustee's objection to the Debtors' claimed exemptions could be overruled on the ground the Trustee has failed to meet his burden to prove that the Debtors' "domicile" was located in a place whose law would preclude them from claiming the exemptions provided by § 522(d).

However, the Court recognizes that the parties were careless in preparing the stipulation and appear to have used "resided" and "residence" as the equivalent of "domicile" in § 522, as the Debtors have not based any arguments on the possibly different meanings of the words. The Court declines to rule against the Trustee on this ground.

### b. The Debtors are entitled to claim the federal exemptions because the Oklahoma opt-out statute does not apply to them.

Under the stipulation, the Court will assume the Debtors' domicile was located in Kansas for about 15 months before they filed their petition, and was located in Oklahoma for about 19 to 20 months before that. Since their domicile was in Kansas for less than

---

[7] *Black's Law Dictionary*, definition 2 for "residence" (9th ed. 2009).

[8] 4 *Collier on Bankruptcy*, ¶ 522.06 at p. 522-40 to -41; *see also Black's Law Dictionary*, definition 1 for "domicile": "The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

9

the full 730-day period before they filed, the fact their domicile was in Oklahoma for the full 180-day period before that 730-day period means, under § 522(b)(3)(A), that Oklahoma provides the exemption law that is applicable to them.

The Trustee broadly declares that Oklahoma has opted out of the federal exemptions, and contends that means Oklahoma does not authorize the Debtors to use the federal exemptions. However, a careful reading of the Oklahoma opt-out statute reveals a flaw in that argument. The statute reads: "*No natural person residing in this state* may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of Section 522" of the Bankruptcy Code.[9] Read literally, this says residents of Oklahoma may not claim the federal exemptions, but it says nothing about people like the Debtors in this case who are not residing in Oklahoma when they file for bankruptcy. Indeed, it is difficult to say why Oklahoma would have any interest in controlling the exemptions a person could claim in a bankruptcy case merely because the person's domicile used to be in Oklahoma. This suggests the Debtors are entitled, under § 522(b)(2), to claim the federal exemptions because Oklahoma law does not preclude them from doing so.

In *In re Camp*, the Fifth Circuit Court of Appeals faced facts identical in relevant respects to those presented here, and ruled the applicable state's opt-out statute did not prevent a former resident from claiming the federal exemptions.[10] In that case, the debtor

---

[9] Okla. St. Ann. tit. 31, § 1(B) (emphasis added).

[10] 631 F.3d 757, 759-61 (5th Cir. 2011).

Case 10-14167    Doc# 53    Filed 01/12/12    Page 10 of 15

filed his bankruptcy case in Texas but had not lived there for the entire 730-day period before he filed; during the majority of the 180-day period prior to the 730-day period, the debtor had lived in Florida.[11] Florida had exercised the exemption opt-out option provided by § 522(b) through a statute that read: "In accordance with the provisions of [11 U.S.C.A. § 522(b)], *residents of this state* shall not be entitled to the federal exemptions provided in [11 U.S.C.A. § 522(d)]. Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes."[12] The Fifth Circuit said, "Therefore, Florida's opt-out statute, by its own express terms, does not apply to nonresident debtors, who remain eligible to use the federal exemptions because nothing in Florida law specifically disallows them from doing so."[13]

The Court notes the Fifth Circuit's ruling cannot be said to defeat Congress's intent as expressed in § 522(b) because it brings debtors like the ones in this case within the general rule the statute provides, namely, that they can claim the federal exemptions established by § 522(d). Section 522(b) does not say all debtors must be entitled to

---

[11]*Id*. at 759.

[12]*Id*. at 760 (quoting Fla. St. Ann. § 222.20 (West 2011), with emphasis added and other alterations made by Fifth Circuit).

[13]*Id*. at 760-61 (citing *In re Battle,* 366 B.R. 635, 636 (Bankr. W.D. Tex. 2006) (holding that Florida's opt-out statute does not bar nonresident debtors from claiming the federal exemptions); *In re Schulz,* 101 B.R. 301, 302 (Bankr. N.D. Fla. 1989) (same); *see also In re Chandler,* 362 B.R. 723, 726–27 (Bankr. N.D.W.Va. 2007) (same, for Georgia's opt-out statute); *In re Underwood,* 342 B.R. 358, 361–62 (Bankr. N.D. Fla.2006) (same, for Colorado's opt-out statute); *In re Volk,* 26 B.R. 457, 460–61 (Bankr. D.S.D. 1983) (same, for South Dakota's opt-out statute); *In re Walley,* 9 B.R. 55, 57–58 (Bankr. S.D. Ala. 1981) (same, for Alabama's opt-out statute).

11

choose the exemptions provided by the law of the state that the statute makes applicable to them. Indeed, the new paragraph added at the end of § 522(b)(3) by BAPCPA indicates Congress recognized it was possible some debtors might not be entitled to do so. This Court agrees with the Fifth Circuit's reasoning in *Camp*, and concludes the Debtors in this case are eligible to claim the federal exemptions under § 522(b)(2) because the Oklahoma opt-out statute does not apply to them.

>**4. The Court has some difficulties with the parties' arguments about the applicability of the saving clause at the end of § 522(b)(3), but need not decide that dispute now since Oklahoma's opt-out statute does not prevent these Debtors from claiming the federal exemptions.**

The Trustee and the Debtors assume the question here is whether the new paragraph that BAPCPA added at the end of § 522(b)(3) authorizes the Debtors to claim the federal exemptions because Oklahoma's exemptions say they are available only to residents of the state.[14] Relying on a decision by a bankruptcy judge in the Southern District of Texas, *In re Garrett*,[15] the Trustee argues § 522(b)(3)(A) preempts such territorial and domiciliary limitations on state-law exemptions, and allows the Debtors to claim only the exemptions provided by Oklahoma law even though they are not residents of that state. The Debtors respond that the Tenth Circuit Bankruptcy Appellate Panel's decision in *In re Stephens*[16] shows that § 522(b)(3)(A) does not preempt territorial

---

[14]*See* Okla. St. Ann. tit. 31, § 1(A) (West 2011).

[15]435 B.R. 434.

[16]402 B.R. 1 (10th Cir. BAP 2009).

limitations on state-law exemptions, and that they are entitled to claim the federal exemptions under BAPCPA's saving clause.

The Court declines the Trustee's invitation to adopt *Garrett*'s reasoning. *Garrett* conceded the majority of courts had ruled that § 522(b)(3)(A) does not preempt a state's law that makes its exemptions available only to residents or domiciliaries, and cited a single bankruptcy court decision, *In re Camp*, that had reached the opposite conclusion.[17] After *Garrett* was decided, the bankruptcy court's decision in *Camp* was reversed by the Fifth Circuit decision discussed earlier in this opinion.[18] This leaves *Garrett* as the only unreversed decision to adopt that preemption conclusion.

Furthermore, *Garrett* relied on an aspect of the bankruptcy court's reasoning in *Camp*[19] that was not reached in the Fifth Circuit's decision, but with which this Court disagrees. The *Camp* bankruptcy court had reasoned that residency restrictions in a state's exemption laws are choice of law provisions, that § 522(b)(2) and (b)(3)(A) are also choice of law provisions, and that when the Bankruptcy Code provisions say the exemption laws of a particular state apply to a debtor, the state's choice of law provisions that would make its exemptions unavailable to that debtor conflict with the Bankruptcy Code and are preempted.[20] This reasoning might be sound if the Bankruptcy Code

---

[17]*Id*. at 439-40.

[18]631 F.3d 757.

[19]*See Garrett*, 435 B.R. at 440-41 (discussing *Camp*, 396 B.R. at 198-99).

[20]396 B.R. at 197-99.

13

provisions did not establish any federal exemptions but merely adopted state exemption laws for all debtors, and the rules in § 522(b) simply established which state's laws would apply in each case. Perhaps because so many states have exercised the opt-out option, it is easy to forget that § 522(b) in fact does something quite different. First, it adopts a default rule that all debtors can claim either (1) the federal exemptions or (2) the applicable state-law exemptions plus nonbankruptcy federal exemptions. Then it authorizes the states to eliminate option 1 in some cases. Finally, under the BAPCPA amendments, it provides a back-up protection that restores a debtor's option to choose the federal exemptions in the event the domiciliary requirement of § 522(b)(3)(A) would render that particular debtor ineligible for any exemptions. As the Tenth Circuit Bankruptcy Appellate Panel suggested in *Stephens*, it does not appear that Congress was trying to preempt any state laws in § 522(b), but instead that it intended to authorize the states in some cases to preempt federal exemption law that would otherwise apply.[21]

Relying on *Stephens*,[22] the Debtors argue that since Oklahoma provides its exemptions only to its residents, they cannot claim any of that state's exemptions and are therefore eligible for the federal exemptions as authorized by the new paragraph at the end of § 522(b)(3). The Court notes that *Stephens* is factually distinct from this case as the Iowa opt-out statute at issue in that case did not limit its application to residents or

---

[21] 402 B.R. 1, 5 (10th Cir. BAP 2009).

[22] 402 B.R. 1.

14

domiciliaries of the state.[23] In addition, *Stephens* ruled that Iowa's homestead exemption was available for property located outside the state, so the saving clause BAPCPA added at the end of § 522(b)(3) did not apply to the debtor's homestead claim.[24] A decision that the saving clause did not apply in one situation does not provide much support for the Debtors' contention the clause does apply in their different situation.

**Conclusion**

For these reasons, the Court agrees with the Fifth Circuit's decision in *Camp* and concludes the Debtors in this case are entitled to claim the exemptions provided by § 522(d) because Oklahoma's opt-out statute does not apply to them. The Trustee's objection to their exemptions is hereby overruled.

# # #

---

[23]*Id*. at 4, n. 9 (quoting Iowa opt-out statute).

[24]*Id*. at 5-8.